**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **HOWARD THOMPSON,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil No. 8:25-03428-CDA** |
| **SOLUTION ONE INDUSTRIES, INC.,** | * | |
| **Defendant.** | * | |
| | * | |

* * *

## MEMORANDUM OPINION

BEFORE THE COURT is a Motion to Dismiss with Prejudice filed by Defendant, Solution One Industries Inc., asserting failure to state a claim. ECF 13-1. The Court has reviewed all papers, and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the following reasons, Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

### I. BACKGROUND[1]

Plaintiff Howard Thompson brought this case against his former employer, Solution One Industries, Inc. Complaint, ECF 1; Amended Complaint, ECF 11 ("Am. Compl."). Mr. Thompson alleges that he is a person with disability by virtue of his high blood pressure. Am. Compl. at ¶¶ 8, 9. He contends that Defendant was aware of his disability. *Id.* at ¶ 10. Mr. Thompson also claims that on or about January 31, 2024, he

---

[1] For the purpose of deciding a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint and construes such facts, as well as reasonable inferences drawn therefrom, in the light most favorable to the non-moving party. *See, e.g.*, *Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 268 (4th Cir. 2022).

suffered a violent attacked by a co-worker, exacerbating his blood pressure problems and causing him to take eight weeks of leave in accordance with the Family Medical Leave Act ("FMLA"). *Id.* at ¶¶ 11-14. When Mr. Thompson returned to work, management manipulated his timesheets and failed to discipline the alleged attacker. *Id.* at ¶¶ 16, 18. When his work environment exacerbated his high blood pressure, Mr. Thompson took a second FMLA leave until June 24, 2024. *Id.* at ¶ 23. Defendant knew of and approved the FMLA leave. *Id.* at ¶ 15. Before and after these FMLA leave periods, Mr. Thompson asked for a transfer and reported his suspicion of manipulated timesheets, his medical issues, and ongoing hostile treatment to human resources personnel. *Id.* at ¶¶ 20, 25. Mr. Thompson then filed a Charge of Harassment and Discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 23, 2024. *Id.* at ¶ 26. The EEOC issued its Notice of Right to Sue on July 18, 2025, which Mr. Thompson received on or about August 13, 2025. *Id.* at ¶ 27. On July 31, 2025, shortly after the EEOC issued the Right to Sue notice issued, Defendant decided not to renew his contract.[2] *Id.* at ¶ 28. The pleadings do not allege when Defendant would have learned of the right to sue letter or how Defendant would have received notice before Mr. Thompson did.

Mr. Thompson filed this lawsuit on October 16, 2025 and amended his allegations on January 26, 2026.[3] The Amended Complaint advances three causes of action: (1) discrimination in violation of the American with Disabilities Act of 1991 ("ADA"),

---

[2] It is not clear if or when Defendant received the Notice. ECF 13-1, at 4.

[3] On January 12, 2026, Defendant filed a Motion to Dismiss Plaintiff's Complaint. ECF 9. Because Plaintiff filed an amended complaint within 21 days of the first Motion to Dismiss, the Court denied Defendant's first Motion to Dismiss as moot. ECF 18; *see also* Fed. R. Civ. P. 15(a)(1)(B) (permitting amendment as a matter of course within 21 days of being served with a Rule 12 motion).

"Maryland State Law[,] and Prince George's County Code"; (2) retaliation under the ADA, "Maryland State Law[,] and the Prince George's County Code"; and (3) violation of the Family Medical Leave Act ("FMLA").[4] Am. Compl. at 4-5. On February 9, 2026, Defendant filed the pending Motion to Dismiss Plaintiff's Amended Complaint. ECF 13. Plaintiff opposed the Motion, and Defendant filed a reply. ECFs 16, 17.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12, dismissal is appropriate where the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a Rule 12(b)(6) motion to dismiss, courts "accept all factual allegations as true and draw all reasonable inferences in favor of the plaintiff." *Washington v. Hous. Auth. of the City of Columbia*, 58 F.4th 170, 177 (4th Cir. 2023) (citing *Singer v. Reali*, 883 F.3d 425, 437 (4th Cir. 2018)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2). "The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the

---

[4] The Amended Complaint does not identify the relevant provision in the Prince George's County Code. Only in the introductory paragraph does the Amended Complaint identify, generally, the State of Maryland's anti-discrimination provisions. Am. Compl. at 1 (referencing "Md. Code Ann. [St. Gov.] [Section] 20-601, et. seq." [sic]) (first brackets in original). The referenced subchapter of the Maryland Code is titled "Discrimination in Employment," and the Court assumes these to be authority giving rise to his claims under state law.

plaintiff's] claim to show that [the plaintiff] has more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014). When considering a motion to dismiss pursuant to Rule 12(b)(6), the court generally does not consider evidence outside the complaint.

## III. ANALYSIS

In its Motion, Defendant asserts that the Amended Complaint (1) fails to state claims for disability discrimination because Mr. Thompson fails to allege that he has a disability as defined by the ADA, that he was terminated because of his alleged disability, and sufficient facts to demonstrate that he was treated differently than similarly situated employees; (2) fails to state a claim for retaliation under the ADA; and (3) fails to state a claim for violation of the FMLA. Def.'s Mem. in Supp. of Mot. to Dismiss ("Def's Br."), ECF 13-1, at 5-6, 9, 10, 12, 14.

The Court reads the Amended Complaint as asserting three claims, albeit from a variety of sources: (1) disability discrimination, based on federal, state, and local statutes; (2) disability retaliation, based on federal, state, and local statutes; and (3) FMLA retaliation in violation of federal law. The Court addresses each in turn.

### A. Plaintiff's disability discrimination claim is dismissed without prejudice.

At the outset, Defendant argues that Mr. Thompson's disability discrimination claim should be dismissed because he has failed to allege sufficient facts to show that he has a disability. Def's Br., ECF 13-1, at 6. Mr. Thompson counters that he adequately pled that he is a person with a disability. Pl.'s Opp'n, ECF 16, at 6. The Court finds that Plaintiff has not alleged sufficient facts to establish that he has a disability.

As a preliminary matter, the Court notes that claims brought under the ADA and under the State of Maryland's anti-discrimination in employment law are generally construed together, as they share elements. *Wonasue v. Univ. of Md. Alumni Ass'n*, 984 F. Supp. 2d 480, 486 (D. Md. 2013) (collecting cases); *Martinez v. Bd. of Educ. of Prince George's Cnty.*, No. 19-0169-PJM, 2020 WL 4926610, at *4 (D. Md. Aug. 21, 2020). Count I alleges a violation of the ADA and well as state and municipal laws prohibiting discrimination based on disability. Am. Compl. at ¶ 30. Thus, the Court analyzes the claim of disability discrimination using the framework provided by the ADA and authority interpreting and applying its provisions.

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(1). The first element of such a claim is that a claimant must have a disability. Surviving a motion to dismiss does not require "extensive detail" about a disability, as this stage requires only that a plaintiff plead facts demonstrating disability discrimination "'above a speculative level.'" *Hice v. Mazzella Lifting Techs., Inc.*, 589 F. Supp. 3d 539, 547 (E.D. Va. 2022) (quoting *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 617 (4th Cir. 2020)); *cf. Curry v. Southwest Airlines Co.*, No. SAG-25-1468, 2025 WL 3062600, at *4 (D. Md. Nov. 3, 2025) (granting motion to dismiss claim where allegations "d[id] not suffice to plead a plausible disability discrimination claim above a speculative level").

Under the ADA, a disability may be: "(1) 'a physical or mental impairment that substantially limits one or more major life activities' (the 'actual-disability' prong); (2) 'a record of such an impairment' (the 'record-of' prong); or (3) 'being regarded as having

such an impairment' (the 'regarded-as' prong)." *Miller v. Md. Dep't of Nat'l Res.*, 813 F. App'x 869, 874 (4th Cir. 2020) (quoting *Summers v. Altarun Inst., Corp.*, 740 F.3d 325, 328 (4th Cir. 2014)). Claiming disability under at least one of the categories is sufficient. *Hice*, 589 F. Supp. 3d at 547. "The primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of disability." 29 C.F.R. § 1630.1(c)(4); *see also Hice*, 589 F. Supp. 3d at 547. Therefore, "[t]he question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis." *Hice* at 547 (quoting Pub. L. No. 110-325, 122 Stat. 3553, § 2(b)(5) (2008)); *accord* 29 C.F.R. § 1630.1(c)(4). However, claims of a disability must meet the pleading standard; that is, mere allegations of disability that do not present a claim above a speculative level do not suffice. *See Miller*, 813 F. App'x at 875-76 (affirming conclusion that the plaintiff failed to plead an actual disability supporting a discrimination claim under the ADA).

***1. Plaintiff has not pleaded an actual disability.***

To allege an actual disability supporting a discrimination claim, an individual must plead that they have "(1) a physical or mental impairment that (2) substantially limits (3) one or more major life activities." *Id.* at 875 (citing 42 U.S.C. § 12102(1)). "Major life activities include 'caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.'" *Id.* (citing 42 U.S.C. § 12102(2)(A)). "[T]he operation of a major bodily function, including but not limited to, . . . neurological . . . functions," may also suffice. *Id.* (citing 42 U.S.C. § 12102(2)(B)). To qualify, "the impairment need only 'substantially limit[] the ability of an individual to

perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting.'" *Id.* (quoting 29 C.F.R. § 1630.2(j)(1)(ii)).

Mr. Thompson alleges that he "was a person with a disability who was able to perform the essential functions of his job with or without an accommodation." Am. Compl. at ¶ 8. He offers that he "suffer[s] from high blood pressure, which he manage[s] with medication and regular doctor visits." *Id.* at ¶ 9. He also claims that the effects of the condition worsened due to the alleged attack by a co-worker. *Id.* at ¶¶ 10, 32. Mr. Thompson contends that, after returning from FMLA leave, he required additional time off for medical attention for high blood pressure and other conditions exacerbated by the attack and Defendant's failure to respond appropriately. *Id.* at ¶ 23. He asserts that "Defendant was aware of [his] disability, [as well as his] need for medication and treatment, including leave for doctor's appointments." *Id.* at ¶ 31.

Aside from concluding that he could not work due to his alleged disability, at no point in his amended complaint does Thompson make the requisite connection explaining *how* his high blood pressure affected his ability to do his work and, most importantly, substantially limited him in "a major life activity as compared to most people in the general population." *Miller*, 813 F. App'x at 875. As noted above, though the law does not require definite or extensive proof of a disability at this stage, mere conclusory statements detached from facts about actual events and limitations will not suffice. *See id.* at 875-76 (finding allegations insufficient to plead a disability where plaintiff offered general allegations of difficulty conducting certain activities, which fell "well short of alleging he was limited 'as compared to most people in the general population,'" and

instead rendered a "conclusory allegation [of a disability] devoid of any reference to actual events"); *Bryant v. Motorsports of Durham, LLC*, No. 1:20-cv-1101, 2021 WL 2662200, at *6 (M.D.N.C. Jun. 29, 2021), *report and recommendation adopted*, 2021 WL 4255108 (M.D.N.C. Sept. 17, 2021) (holding that the complaint did not satisfy the federal pleading standard where it propounded conclusory statements that the plaintiff's diagnosis of depression and anxiety impacted major life activities without any "factual development" regarding the alleged impact); *Akbar-Hussain v. ACCA, Inc.*, No. 16-cv-1323, 2017 WL 176596, at *4 (E.D. Va. Jan. 17, 2017) (granting motion to dismiss because, *inter alia*, the complaint was "devoid of any allegations that either bipolar disorder or ADHD have impacted tasks central to [the plaintiff's] daily life[,]" and did not otherwise demonstrate that any difficulties at work "were or could have been tied to her mental health"). Mr. Thompson's bare allegation of a disability (high blood pressure) without any explanation of how this disability affects his ability to work or perform other major life activities compared to most in the general population, does not plead an actual disability supporting a viable discrimination claim.

***2. Plaintiff has not pleaded that he has a record of a disability.***

"An individual has a record of a disability if the individual has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k); *see also Hice*, 589 F. Supp. 3d at 549. "To survive a motion to dismiss, a plaintiff using this prong must allege facts or indicate that defendant or any of its employees knew, had records, or had misclassified [p]laintiff as having a physical impairment that substantially limits one or more major life activities." *Speaks v. Health Sys. Mgmt., Inc.*, No. 5:22-cv-0077, 2022 WL 3448649, at *5 (W.D.N.C. Aug. 17, 2022) (internal quotation marks and citation omitted); *see also*

*Parker v. Montgomery Cnty. Pub. Schs.*, No. DKC-97-3630, 1999 WL 33100520, at *18-19 (D. Md. Sept. 27, 1999) (quoting 29 C.F.R. § 1630.2(k)) (explaining that an individual may be found to have a record of a disability "'if a record relied on by an employer indicates that the individual has or has had a substantially limiting impairment'"). However, a plaintiff satisfies the "'record of impairment' standard" only where they "actually suffered a physical impairment that substantially limited a major life activity." *Parker*, 1999 WL 33100520, at *18-19 (citing *Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1229 (11th Cir. 1999)).

Mr. Thompson asserts that Defendant knew of his alleged disability. However, as explained above, he fails to allege facts showing substantial limitations in a major life activity as compared to most. Therefore, he has not satisfied, even at the pleading stage, the "record of impairment" standard.

### 3. *Plaintiff has not pled that he could be regarded as having a disability*

"An individual is regarded as having a disability 'if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.'" *Miller* 813 F. App'x at 876 (quoting 42 U.S.C. § 12102(3)(A)). "Whether a plaintiff is regarded as disabled 'turns on the employer's perception of the employee.'" *Hice*, 589 F. Supp. 3d at 549 (quoting *Donaldson v. Trae-Fuels, LLC*, 399 F. Supp. 3d 555, 559 (W.D. Va. 2019)). When pursuing this theory, a plaintiff must plead and prove that the employer regarded them as having a mental or physical impairment; they do not need to plead or prove that the perceived impairment(s) substantially limited at least one major life activity. *Donaldson*, 399 F. Supp. 3d at 559-

60 (quoting *Mercado v. Puerto Rico*, 814 F.3d 581, 588 (1st Cir. 2016)); *see also Nunies v. HIE Hldgs., Inc.*, 908 F.3d 428, 434 (9th Cir. 2018) ("Based on the plain language of the [ADA Amendments Act], it was error for the district court to require [the plaintiff] to present evidence that [the defendant] believed that [the plaintiff] was substantially limited in a major life activity.").

Mr. Thompson has not stated a claim under the "regarded as" prong. At this stage, he does not have to prove, through extensive factual demonstration, that his disability was the true reason for his termination. It is sufficient, for pleading purposes, that he alleges he was terminated because of an actual or perceived impairment. In his brief opposing dismissal, he argues that "Defendant knew that Plaintiff suffered from high blood pressure and as alleged, that was at least one of the reasons for Defendant's unlawful treatment of Plaintiff." Pl.'s Opp'n at 6. The Amended Complaint, however, does not allege a causal relationship between the unlawful treatment and his high blood pressure. *See* Am. Compl. at ¶ 22 (noting that "[a]fter his return from FMLA in June, 2024, Defendant continued to manipulate and alter Plaintiff's time sheets, in retaliation for reporting the attack, requesting a transfer or reassignment and for taking FMLA leave[]" but never connecting the retaliation to his alleged disability); ¶ 25 (stating that "Plaintiff continued to report issues of being subjected to a hostile work environment and time sheet problems to HR and management through and including July 31, 2025 when his contract for employment was terminated" without connecting his workplace problems or termination to his disability). Mr. Thompson does not sufficiently connect his alleged disability with any unlawful action in the body of his Amended Complaint. *See Akbar-Hussain*, 2017 WL 176596, at *4. His brief invites the Court to draw this conclusion

without sufficient allegations to support this view. The Court declines to do so. The Motion to Dismiss Count I is granted without prejudice.

### B. The Motion is granted as to Plaintiff's disability retaliation claim (Count II) but denied as to the FMLA violation (Count III).

Count II alleges retaliation in violation of the ADA and state and local laws, while Count III alleges a violation of the FMLA. Mr. Thompson contends that "[a]fter his return from FMLA in June 2024, Defendant continued to manipulate and alter Plaintiff's time sheets, in retaliation for him reporting the attack, requesting a transfer or reassignment and for taking FMLA leave." Am. Compl. at ¶ 22. He further alleges that he "continued to report issues of being subjected to a hostile work environment and time sheet problems to HR and management through and including July 31, 2025 when his contract for employment was terminated." *Id.* at ¶ 25. This led to his filing a Charge of Harassment and Discrimination with the EEOC and concluded with Defendant's "decision not to renew Plaintiff's contract," thus terminating Mr. Thompson's employment "shortly after the Right to Sue Notice was issued." *Id.* at ¶¶ 26, 28. Notably, Mr. Thompson does not indicate when Defendant learned (or would have learned) of the Right to Sue Notice.

The ADA prohibits employers from "discriminat[ing] against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). Similarly, the FMLA protects employees from discrimination and retaliation for exercising their rights under the FMLA. *Wright v. Southwest Airlines*, 319 F. App'x 232, 233 (4th Cir. 2009). Under the FMLA, an employer cannot "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]" and

cannot "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]." 29 U.S.C. § 2615(a)(1)-(2). "The first prohibition gives rise to 'interference' or 'entitlement' claims." *Fry v. Rand Constr. Corp.*, 964 F.3d 239, 244 (4th Cir. 2020) (citation omitted). "The second prohibits retaliation or discrimination for opposing unlawful practices" or for taking leave—or exercising other "substantive rights" under the FMLA." *Id.* at 244-245 (internal quotation marks and citations omitted). Mr. Thompson claims that he was discriminated against and retaliated against for exercising rights under the FMLA. Am. Compl. at ¶ 46.

Claims for ADA retaliation or an FMLA violation share the same elements as a prima facie retaliation claim under Title VII. *A Society Without a Name v. Commonwealth of Va.*, 655 F.3d 342, 350 (4th Cir. 2011) (ADA retaliation); *Curry v. Southwest Airlines Co.*, No. SAG-25-01468, 2026 WL 923325, at *4 (D. Md. Apr. 6, 2026) (FMLA violation). The plaintiff must establish (1) that they engaged in a protected activity; (2) that they suffered an adverse action, and (3) a causal link between the protected activity and the adverse action. *Jacobs v. N.C. Admin. Off. of the Courts*, 780 F.3d 562, 578 (4th Cir. 2015); *Curry*, 2026 WL 923325, at *4.

*i. The disability discrimination claim (Count II) fails due to lack of a protected activity connected to Mr. Thompson's alleged disability.*

Defendant argues that Mr. Thompson's "vague complaints about a 'hostile work environment' and time sheet problems in the couple of months leading up to his termination do not constitute protected activity under the ADA." Def's Br. at 13. While "general complaints of unfair treatment" are not protected, "an employee's complaint constitutes protected activity when the employer understood, or should have understood, that the plaintiff was opposing discriminatory conduct." *Romeo v. APS Healthcare*

*Bethesda, Inc.*, 876 F. Supp. 2d 577, 588 (D. Md. 2013) (internal quotation marks and citations omitted). "Opposition activities include not only filing a formal discrimination complaint, but also utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Brady v. Bd. of Educ. of Prince George's Cnty.*, 222 F. Supp. 3d 459, 474 (D. Md. 2016) (internal quotation marks and citations omitted).

Defendant avers that Mr. Thompson's complaints concerned his "being attacked by a coworker and gripes about personnel matters," not his alleged disability. Def.'s Br. at 14 (citing Am. Compl. at ¶ 35). Mr. Thompson responds that "he continued to report" issues related to time sheet manipulation and a hostile work environment to [Human Resources] and management regularly from the time following [the] attack on January 31, 2024 through his termination date on July 31, 2025." Pl.'s Opp'n at 7.

The Court concludes that Count II fails because Mr. Thompson does not allege "protected activity" involving more than a general complaint about unfair treatment. As noted above, the Amended Complaint lacks any connection between his disability and the complaints to human resources and management. Thus, there is no protected activity to support the alleged ADA retaliation theory. Further, Mr. Thompson fails to connect his EEOC filing with any alleged harassment and discrimination based on his alleged *disability*. Therefore, therefore the mere filing of the EEOC charge does not favor Plaintiff in this analysis. Count II, which alleges retaliation in violation of laws focused on disability discrimination, is dismissed without prejudice.

*ii. Plaintiff sufficiently alleges the elements for an FMLA violation (Count III).*

The FMLA theory fares differently. The Court finds the "protected activity" element met based on the allegation that Mr. Thompson's timesheets were altered as a retaliation for him taking FMLA leave. *See* Am. Compl. at ¶ 22. As to the second element—whether Mr. Thompson suffered an adverse employment action—the Amended Complaint alleges that he continuously reported issues, which he attributes to his taking FMLA leave, and was eventually terminated. An adverse employment action is one that "'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (quoting *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004)) (alteration in original). "Typical examples of adverse employment actions include 'discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion.'" *Booth v. Cnty. Exec.*, 186 F. Supp. 3d 479, 485 (D. Md. 2016) (citing *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999)). Because Mr. Thompson alleges that the altered timesheets resulted in a pay decrease and eventual termination, the Court concludes that the second element is met.

Turning to the third element, a causal link between the first two elements, Defendant argues that "[a]ny purported causal connection is broken due to the substantial amount of time that passed between the alleged protected activity and Thompson's termination." Def.'s Br. at 13. Mr. Thompson contends that his complaints to HR and management were continuous through his termination date and that he was terminated two weeks after the Right to Sue letter was issued. Pl.'s Opp'n at 7. "Although [a] prima facie showing of causation requires little proof, the plaintiff must show that it is

more likely than not that her employer took the adverse employment action in retaliation for her protected activity." *Romeo*, 876 F. Supp. 2d at 588 (internal quotation marks and citation omitted) (alteration in original). In demonstrating a prima facie case of retaliation, a plaintiff may establish a causal link by showing that the "'employer [took] adverse employment action against the employee shortly after learning of the protected activity.'" *Id.* (quoting *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004)). In addition to a temporal proximity approach, a plaintiff may demonstrate a causal connection through "continuing retaliatory conduct and animus" that bridges a longer gap between protected activity and the adverse action. *Johnson v. Balt. City, Md.*, 163 F.4th 808, 819-20 (4th Cir. 2026) (internal quotation marks and citation omitted). Taking the well-pleaded allegations as true at this stage, the Court concludes that Mr. Thompson alleges a causal connection in that he pleads that his FMLA leave resulted in Defendant manipulating his timesheets and in his eventual termination. Regardless of the Defendant's knowledge of the Right to Sue notice, the Amended Complaint asserts manipulation of time sheets and continuous complaints after his June 2024 return from FMLA leave. He is entitled to proceed to discovery so that the parties may test the veracity of these allegations. Thus, the Court denies Defendant's Motion to Dismiss Count III.

* * *

Defendants seek dismissal with prejudice. The Court declines to do so, finding such a result unwarranted based on this record. *See Adbul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 292 (4th Cir. 2018) (stating that "the nature of dismissal" is left to "the sound discretion of the district court").

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion is granted in part and denied in part. The Motion is granted as to Counts I and II, which are dismissed without prejudice. The Motion is denied as to Count III. A separate implementing Order will follow.

Date: September 28, 2026

/s/
Charles D. Austin
United States Magistrate Judge